## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM F. DAVIS, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 08-869-SLR |
| | ) |
| CORRECTIONAL MEDICAL | ) |
| SERVICES, NURSE BEN ABIONA, | ) |
| CRYSTAL E. HEATH, and | ) |
| SUPERVISOR RON HOSTERMAN, | ) |
| | ) |
| Defendants. | ) |

William F. Davis, III, James T. Vaughn Correctional Center, Smyrna, Delaware.  Pro Se
Plaintiff.

Daniel A. Griffith and Scott G. Wilcox, Esquires, Whiteford, Taylor & Preston, L.L.C.,
Wilmington, Delaware.  Counsel for Defendants Correctional Medical Services, Ben
Abiona, and Crystal E. Heath.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice,
Wilmington, Delaware.  Counsel for Defendant Ron Hosterman.

**MEMORANDUM OPINION**

Dated: January 10, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff William F. Davis, III ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. He proceeds pro se and was granted leave to proceed in forma pauperis. Presently before the court are defendant Ronald Hosterman's ("Hosterman") motion to dismiss, motion to strike, and motion to stay discovery (D.I. 49, 56, 65); motion for summary judgment filed by defendants Correctional Medical Services ("CMS"), Ben Abiona ("Abiona"), and Crystal E. Heath ("Heath") (collectively, "medical defendants") (D.I. 51); and plaintiff's motion for default judgment and motion to compel (D.I. 60, 61). The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons discussed, the court will grant the motion to dismiss, grant the motion for summary judgment, grant the motion to strike, deny the motion for default judgment, deny the motion to compel, and deny as moot the motion to stay discovery.

## II. BACKGROUND

Plaintiff suffers from bipolar disorder, depression, and an anti-social personality disorder. He was housed in the VCC's special needs unit program, but alleges that he required a transfer because it was unsafe. The court conducted an initial screening of the original complaint filed November 21, 2008, and allowed plaintiff to proceed with failure to protect and medical/mental health needs claims against defendants Daniel Barrett ("Barrett"),[1] CMS, Abiona, and Heath.[2] (D.I. 2, 9) Plaintiff amended the

---

[1] Misspelled in the complaint as "Barett".

[2] Plaintiff voluntarily dismissed the claims against Barrett. Plaintiff sought to reinstate Barrett, but later withdrew the motion. (See D.I. 24, 27, 41) The court

complaint and added Hosterman as a defendant.  (D.I. 17)  On May 14, 2010, Hosterman filed a Rule 12(b)(6) motion to dismiss the claims against him and, a few days later, plaintiff filed an amended complaint without leave of court.  (D.I. 49, 53) Hosterman moves to strike the amended cornplaint.  (D.I. 53)  On July 1, 2010, plaintiff filed a response to the motion to dismiss.  (D.I. 68)

Plaintiff raises two claims against medical defendants.  He first claims physical injury and emotional and mental distress.  Plaintiff alleges that he wrote to the treatment administration regarding deficiencies in policies and procedures concerning mental health care and safety issues and that he was denied mental health treatment.[3]  (D.I. 9) Plaintiff alleges that CMS and Heath were aware of his concerns, but failed to follow policies and procedures to prevent officers and other inmates from harassing him. Plaintiff's other medical needs claim centers around a nose injury he suffered following an altercation with a fellow inmate.  He was seen by Abiona, who ordered an x-ray.  The x-ray revealed a nasal bone fracture, but plaintiff was not given follow-up medical treatment by medical defendants for one and one-half years.  He suffered discomfort and breathing problems.

---

dismissed failure to protect claims raised against CMS and Heath during the initial screening of the complaint.  (D.I. 9)

[3]Medical defendants and plaintiff both discuss, to some extent, failure to protect issues.  CMS, in particular, discusses the failure to protect claims in arguing that it cannot be held liable under a respondeat superior theory and that plaintiff failed to allege a policy or custom that demonstrates deliberate indifference by CMS.  The failure to protect claims were previously dismissed and the issue will not be addressed in this memorandum opinion and order.  *See* n.1, *supra*.

Medical defendants move for summary judgment pursuant to Fed. R. Civ. P. 56 on the grounds that plaintiff failed to: (1) file an affidavit of merit for his medical negligence claim as required by Delaware law; (2) exhaust his administrative remedies; (3) demonstrate CMS' personal involvement and/or that CMS violated an established policy or procedure; and (4) establish inadequate medical treatment.[4] (D.I. 51)

## III. MOTION TO DISMISS

### A. Standard of Review

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

---

[4]Medical defendants did not provide any exhibits or affidavits in support of their motion for summary judgment and it contains only three citations to the record; two citations are to orders entered in this case and the other cites to the complaint. (D.I. 2, 9, 42) The court should not "be required to scour the . . . records and transcripts, without specific guidance, in order to construct specific findings of fact" to support its memorandum opinion and order. *See Holland v. New Jersey Dep't of Corr.*, 246 F.3d 267, 285 (3d Cir. 2001). As noted by the Seventh Circuit, "Judges are not like pigs, hunting for truffles buried in the record." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (quoting *Albrechtsen v. Board of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) and *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, –U.S.– , 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "plausible claim for relief." *Id.* at 211; *see also Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570. In other words, the complaint must do more than allege plaintiff's entitlement to relief; rather, it must "show" such an entitlement with its facts. A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## B. Dismissal

The amended complaint alleges that: (1) plaintiff wrote to Hosterman, the mental health administrator, who oversees mental health treatment and safety; (2) a letter written by plaintiff in September 2007 was forwarded to Hosterman by Deputy Warden Burris ("Burris") for investigation and a response, but Hosterman did not respond to plaintiff; and (3) plaintiff was told to speak to Hosterman. (D.I. 17 at 1, 3) Hosterman moves to dismiss the claims on the grounds that he is unable to determine the legal basis for the claims asserted against him. (D.I. 49) He argues that, even liberally construing the amended complaint, its allegations do not meet the pleading requirements of Fed. R. Civ. P. 8 and fall far short of reciting a cognizable claim.

The amended complaint fails to meet the pleading requirements of *Iqbal* and *Twombly* as it fails to allege sufficient facts to show an entitlement to relief. At most, the amended complaint describes the position held by Hosterman and indicates that plaintiff was advised to speak to him. Plaintiff complains that Hosterman did not conduct an investigation or contact him after he complained to Burris. However, Hosterman's failure to investigate or contact plaintiff are not constitutional violations. Indeed, an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a § 1983 claim. *See Graw v. Fantasky,* 68 F. App'x 378 (3d Cir. 2003) (not published); *Brooks v. Beard,* 167 F. App'x 923, 925 (3d Cir. 2006) (not published) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir.1993) (summary judgment properly granted to prison warden

and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions); *Lewis v. Williams,* 2006 WL 538546, at *7 (D. Del. 2006) (failure to investigate grievance does not raise a constitutional issue); *Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D. Pa.1997), *aff'd*, 142 F.3d 430 (3d Cir.1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

The amended complaint fails to allege that Hosterman violated plaintiff's constitutional rights.  Therefore, the court will grant Hosterman's motion to dismiss.

### C. Motion to Strike Amended Complaint

The court will grant Hosterman's motion to strike the amended complaint (D.I. 53) that was filed by plaintiff without leave of court.  (D.I. 56)  Pursuant to Fed. R. Civ. P. 15(a), a party may amend its pleading once as a matter of course within twenty-one days after serving it or, if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a Rule 12(b), whichever is earlier.  Otherwise, a party may amend its pleading only with the opposing party's written consent or the court's leave.  Rule 15 provides that court should freely give leave to amend when justice so requires.  Plaintiff was not given leave of court and defendants did not consent to the amendment.

The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990) (citations omitted).  Amendment, however, is not automatic.  *See Dover Steel Co., Inc. v. Hartford Accident and Indem.*, 151 F.R.D. 570, 574 (E.D. Pa. 1993).  Leave to amend should be

granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962);_See also Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).

The amended complaint found at docket item 53 contains many of the same allegations as in the amended complaint found at docket item 17. For example, it alleges that Hosterman did not conduct an investigation or contact plaintiff and refers to Hosterman's responsibilities for mental health treatment and rehabilitation programs, education, and counseling. As discussed above, these are not constitutional violations.

The amended complaint (D.I. 53) also contains the following conclusory allegations without supporting facts: (1) Hosterman was aware of plaintiff's mental health needs and mental condition that resulted from his living conditions; (2) Hosterman failed to "make sure" plaintiff received adequate mental health treatment, adequate rehabilitation and education programs for special needs inmates, and safety and protection according to his job title and by reason of his responsibility as a treatment administrator; (3) Hosterman did nothing to ensure plaintiff received adequate mental health treatment or to protect plaintiff from assault by fellow inmates; and (4)

-7-

Hosterman knew plaintiff has a bipolar depression disorder and that caused him increased stress, anxiety and sleeping problems.

The amended complaint (D.I. 53) falls far short of the pleading requirements of *Iqbal* and *Twombly*. The claims are conclusory, there are few facts, and it does not state plausible claims for relief. After reviewing the amended complaint filed by plaintiff on May 21, 2010 (D.I. 53), the court concludes that amendment was futile. For the above reasons, the court will grant Hosterman's motion to strike the amended complaint found at docket item 53. (D.I. 56) The court will deny as moot Hosterman's motion to stay discovery pending resolution of his motion to dismiss. (D.I. 65)

## IV. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

The court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The mere existence of some evidence in support of the nonmoving party, however, will

-8-

not be sufficient for denial of a motion for summary judgment; there must be enough
evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See
Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Moreover, a party opposing
summary judgment "must present more than just 'bare assertions, conclusory
allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United
States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*,
477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on
an essential element of its case with respect to which it has the burden of proof, the
moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*,
477 U.S. 317, 322 (1986).

### B. Medical Negligence

Medical defendants move for dismissal of plaintiff's medical negligence claims for
his failure to comply with Delaware law. In Delaware, medical malpractice is governed
by the Delaware Health Care Negligence Insurance and Litigation Act. 18 Del. C. §§
6801-6865. When a party alleges medical negligence, Delaware law requires the party
to produce an affidavit of merit with expert medical testimony detailing: (1) the
applicable standard of care, (2) the alleged deviation from that standard, and (3) the
causal link between the deviation and the alleged injury. *Bonesmo v. Nemours Found.*,
253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting *Green v. Weiner*, 766 A.2d 492, 494-
95 (Del. 2001)) (internal quotations omitted); 18 Del. C. § 6853. Because plaintiff
alleges medical negligence, at the time he filed the complaint, he was required to submit
an affidavit of merit as to each defendant, signed by an expert witness. 18 Del. C. §
6853(a)(1).

-9-

The court has reviewed the record and finds that plaintiff failed to accompany the complaint with an affidavit of merit as required by 18 Del. C. § 6853(a)(1). Therefore, the court will grant medical defendants' motion to dismiss the medical negligence claims.

## C. Exhaustion of Administrative Remedies

Medical defendants argue that plaintiff failed to exhaust his administrative remedies prior to filing suit as is required under 42 U.S.C. § 1997e(a) and, therefore, the claims against them must be dismissed. Medical defendants concede that plaintiff filed several grievances and that certain grievances have been resolved by informal resolution. Medical defendants posit that plaintiff, therefore, waived his right to assert the claims in this action.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Medical defendants have the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action. *Ray v. Kertes,* 285 F.3d 287, 295-96 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues."

-10-

*Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  Exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

" '[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion."  *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004)).  A prisoner must complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA.  *Nickens v. Department of Corr.*, 277 F. App'x 148, 152 (3d Cir. 2008) (not published) (citing *Williams*, 482 F.3d at 639; *Spruill*, 372 F.3d at 228, 231).  A futility exception to the PLRA's mandatory exhaustion requirement is completely precluded.  *Banks v. Roberts*, 251 F. App'x 774, 776 (3d Cir. 2007) (not published) (citing *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000)).  The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available.  *See Spruill*, 372 F.3d at 227-28; *Nyhuis*, 204 F.3d at 67.  A grievance procedure is not available, even if one exists on paper, if the defendant prison officials somehow prevent a prisoner from using it.  *Mitchell v. Horn*, 318 F.3d 523 (3d Cir. 2003).  If prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him.  *Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002).

Delaware Department of Correction administrative procedures provide for a multi-tiered grievance and appeal process.  Medical grievances are first forwarded to the medical services staff who attempt an informal resolution of the matter.  If this fails,

-11-

the grievance goes to the Medical Grievance Committee, which conducts a hearing.  If the matter is still not resolved, the inmate may once again appeal.  DOC Policy 4.4 (revised May 15, 1998).

The record reflects that plaintiff exhausted his grievances complaining of the delay or lack of medical treatment for his fractured nose.  Plaintiff submitted three grievances regarding the issue.  The first two, grievance numbers 142857 and 147204, were submitted on September 22, 2007 and December 1, 2007, respectively.  In both instances plaintiff agreed to an informal resolution.  The grievance resolution indicates that a request would be made for plaintiff to see a physician for evaluation of his nasal condition and any treatment recommendations, if necessary.  (D.I. 54, exs.)  Plaintiff filed a third grievance on November 25, 2008, after filing his complaint.  Rather than seek medical attention, the grievance asks for the names of the nurse supervisor, medication administrator, the nurse who treated him, and the person in charge of follow-up care.  The grievance is akin to a discovery request.  The grievance was informally resolved with instructions to "respond to the inmate's action request in detail." (*Id.*) Inasmuch as the foregoing grievances were resolved in plaintiff's favor, there was nothing to appeal and, thus, plaintiff exhausted the remedies available to him. Accordingly, the court will deny medical defendants' motion for summary judgment on the issue of failure to exhaust administrative remedies relative to medical care for plaintiff's nasal condition.

Plaintiff also contends that medical defendants did not provide him with mental health treatment.  The record reflects that plaintiff filed one grievance regarding mental health treatment on June 21, 2009, several months after the complaint was filed.

-12-

Plaintiff requested that he be "tested IQ for mental health treatments." (D.I. 71, ex. 4)
The request was denied and plaintiff was provided with an appeal form. There is no
indication in the record that plaintiff appealed the decision.[5] Plaintiff failed to exhaust
his administrative remedies relative to his mental health treatment claims.[5] Therefore,
the court will grant the medical defendants' motion for summary judgment for failure to
exhaust the mental health treatment claims.

### D. Medical Needs

Medical defendants move for summary judgment on the grounds that plaintiff
failed to show deliberate indifference in the denial of medical treatment. In addition,
they argue that he failed to present proof that medical defendants knew of, and
disregarded, his medical condition and that further medical attention was needed to
address the injury. While plaintiff's medical records indicate that he had a fractured
nose, medical defendants argue there is no proof of deliberate indifference in denying
medical treatment.

---

[5]The record contains numerous other grievances submitted by plaintiff germane
to the dismissed failure to protect claims. The grievances complain of attacks by fellow
inmates, housing assignments, and mental health treatment of inmates who attacked
plaintiff.

[5]Although plaintiff did not exhaust his mental health treatment claim, mental
health records indicate that he was seen on a fairly regular basis beginning as early as
2000. Relative to his current claims, plaintiff was seen on September 10, 2007, and
was referred to the special needs unit on October 23, 2007. He received mental health
treatment on December 4 and 28, 2007, January 1, 14, and 29, 2008. Plaintiff's mental
health status was evaluated on February 27, 2008 and plaintiff was referred to mental
health on March 28, 2008. He also received mental health treatment on August 28,
2008. (D.I. 3, 55, 72)

In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

Plaintiff's nose was injured on December 2, 2006. Abiona examined plaintiff and noted "nose slightly bent to the right." An x-ray, taken on February 2, 2007, provided an impression of a nasal bone fracture with opacification within the nasal cavity. It also suggested a foreign body over the right maxillary sinus. Clinical correlations were suggested and a follow-up scheduled for February 9, 2007. There is no indication in the medical records that plaintiff was seen on February 9, 2007. Plaintiff, however, did not

-14-

complain or request treatment for the condition until September 9, 2007, when he complained of breathing difficulty. He was seen on September 20, 2007, in response to his request and scheduled to see a physician whom he saw on October 3, 2007. He was diagnosed with a nasal obstruction and medical requested a consult with an ear, nose, and throat physician ("ENT"). The request was approved and plaintiff was seen by an ENT on November 27, 2007. Plaintiff complained of right nasal airway obstruction. He was diagnosed with severe septal deviation and post-traumatic septal fracture. The ENT indicated that plaintiff needed surgical nasal septal reconstruction. Two days later medical made a request for plaintiff to undergo the procedure. The request was deferred upon receipt of additional information and a new request submitted on December 20, 2007. The request was deferred again pending an evaluation of plaintiff by Dr. McDonald. (D.I. 3, 35)

Plaintiff was seen by medical on January 8, 2008. He submitted a request for medical care on February 14, 2008, complaining of breathing difficulty. Another consultation request for plaintiff to undergo surgical nasal septal reconstruction was submitted on March 11, 2008. The medical director supported the request for surgery. Plaintiff was seen by medical on March 31, 2008, his surgery was scheduled and, on April 15, 2008, he was seen for a preoperative examination. On May 20, 2008, plaintiff was admitted to the infirmary for preoperative fasting. At that time, he advised medical that he did not wish to undergo the surgery. Medical, however, continued with the plan of care and referred plaintiff to the physician. The next day, plaintiff signed a refusal for the repair of the deviated septum. He continued to refuse the procedure even after speaking to the physician. (D.I. 35)

-15-

The record reflects that, following the x-ray, plaintiff did not complain about his nasal condition for seven months. Once he did, the condition was consistently monitored and evaluated on several occasions. Plaintiff was approved for surgery, but he refused to undergo the procedure. Six months after his refusal, plaintiff filed this lawsuit. Upon review of the record, the court finds that there is insufficient evidence to enable a jury to reasonably find for plaintiff on the issue of whether defendants were deliberately indifferent to his medical needs. Therefore, the court will grant medical defendants' motion for summary judgment as to this issue.

## V. MISCELLANEOUS MOTIONS

### A. Motion for Default Judgment

Plaintiff moves for entry of default judgment pursuant to Fed. R. Civ. P. 55(a) for medical defendants' failure to respond to plaintiff's motion for summary judgment. (D.I. 60) A party seeking to obtain a default judgment must first request that the Clerk of Court enter the default of the party who has failed to plead or otherwise defend, supported by affidavit or otherwise. Fed. R. Civ. P. 55(a).

Plaintiff's motion for summary judgment was denied without prejudice to renew. (See D.I. 42) In addition, medical defendants filed an answer. Accordingly, the court will deny the motion. (D.I. 60)

### B. Motion to Compel

Plaintiff moves to compel responses to his first request for production of documents served on defendants on or about September 10, 2009. (D.I. 26, 61) Plaintiff contends that medical defendants did not respond to his request. However, the court docket indicates that medical defendants responded to the request on or about

-16-

January 21, 2010, and provided to plaintiff all documents in their possession.

Therefore, the court will deny plaintiff's motion to compel.  (D.I. 61)

## VI.  CONCLUSION

For the reasons discussed above, the court will grant Hosterman's motion to

dismiss and motion to strike the amended complaint.  (D.I. 49, 56)  The court will deny

as moot, Hosterman's motion to stay discovery.  (D.I. 65)  The court will grant medical

defendants' motion for summary judgment.  (D.I. 51)  Finally, the court will deny

plaintiff's motion for default judgment and motion to compel.  (D.I. 60, 61)  An

appropriate order will be entered.